**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re ELLEN G. MUELLER, | ) | Case No. 05-63770-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## **ORDER**

For the reasons stated in the accompanying memorandum, the motion of the United

States trustee to dismiss this case for substantial abuse shall be and hereby is denied.

So ORDERED.

Upon entry of this Memorandum the Clerk shall forward copies to the United States

trustee, the chapter 7 trustee, the Debtor and Roy Bradley, Esq., counsel for the Debtor.

Entered on this 25th day of August, 2006.

William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

In re ELLEN G. MUELLER,                    )      Case No. 05-63770-7
                                           )
              Debtor.                      )
                                           )
_____    )

**<u>MEMORANDUM</u>**

This matter comes before the court on a motion brought by the United States trustee

under section 707(b) of the bankruptcy code[1] to dismiss this case for substantial abuse.  Ellen G.

Mueller ("the Debtor") opposes the motion.

This court has jurisdiction over this matter.  28 U.S.C. §§ 1334(a).  This is a core

proceeding.  28 U.S.C. § 157(b)(2)(A).  Accordingly, this court may render a final order.  This

memorandum shall constitute the Court's findings of fact and conclusions of law as directed by

Fed. R. Bankr. P. 7052, which is made applicable in this proceeding by Fed.R.Civ.P. 52.

For the reasons stated below, the Court concludes that it would not be a substantial abuse

of the provisions of chapter 7 for the Debtor to continue under this chapter.  The motion will be

---

[1]        Herein, "Section" refers to the given section in the bankruptcy code.  The bankruptcy code is
codified at 11 U.S.C. § 101 et seq.

1

denied.

## I. Facts

On September 30, 2005, the Debtor filed an individual chapter 7 petition.  The Debtor scheduled no real property.[2]  She scheduled total secured claims in the amount of $5,822.19, and general unsecured claims in the amount of $20,735.30.[3]   She did not schedule any priority unsecured claims.[4]

The Debtor has been employed full-time for approximately thirteen months as a secretary for LG&E Power Services.  The Debtor scheduled monthly gross income of $3,250.00 from her employment with LG&E Power Services.[5]  She scheduled monthly net income of $2,329.17 from that position.[6]  The net income is calculated in part by a deduction from the Debtor's gross income in the amount of $62.83 that constitutes a monthly payment made toward repaying a loan from her 401(k) retirement account.  On the date of petition, the outstanding balance on the debt owed to the 401(k) account was $919.91. The Debtor also scheduled income from "pension or retirement income" in the amount of $1,189.41.[7]

The Debtor scheduled total monthly expenses in the amount of $3,535.00.[8]  The Debtor is single and did not disclose any dependents on her schedules.  The Debtor current rents a room

---

[2]     See Debtor's Schedule A.

[3]     See Debtor's Schedules D and F.

[4]     See Debtor's Schedule E.

[5]     See Debtor's Schedule I.

[6]     See Debtor's Schedule I.

[7]     See Debtor's Schedule I.

[8]     See Debtor's Schedule J.

2

from her daughter.

On January 17, 2006, the United States trustee filed a motion under 11 U.S.C. § 707(b) to dismiss this case on the grounds that granting relief would constitute substantial abuse.

## II. Discussion

A case under chapter 7 may be dismissed if (1) the debtor's debts are primarily consumer debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief.  11  U.S.C. § 707(b)[9].

"There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b).  The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)).  The presumption, however, is meant to be something more than a rule about the burden of proof since that burden would already have been on the party seeking to dismiss the case.   Collier, supra.   "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present."   4 Collier on Bankruptcy at 707-28.  (Emphasis added.)

---

[9]        Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

The first issue is whether the Debtor's debts are consumer debts.  Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose".  11 U.S.C. § 101(8).  The Debtor does not deny that her debts are primarily consumer debts in this case.

We turn now to the second issue, that of substantial abuse.  In <u>Green</u>, the Fourth Circuit provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse.  In <u>Green</u>, the debtor was employed as a bus driver, a job that he had held for at least 13 years.  His income exceeded his necessary expenses by $638.00 per month.  He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989.  The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income.  The United States District Court affirmed the decision of the Bankruptcy Court.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse.  <u>Green</u>, 934 F.2d at 571-572.  Rather, the Court concluded that "the determination must be made on a case-by-case basis, in light of the totality of the circumstances."  <u>Green</u>, 934 F.2d at 572.   The Court remanded the case to the Bankruptcy Court with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a trial court should consider disposable income in rendering a decision on a motion under section

4

707(b).[10]  The Fourth Circuit first held that the existence of disposable income does not, without

more, constitute substantial abuse.  The Court based the holding on three inquiries.

The Court first considered a *per se* rule basing dismissal solely on the existence of

disposable income by looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to
> agree on a definition of substantial abuse which would encompass these countervailing
> considerations in all situations.   Nevertheless, in unsuccessfully attempting to carve out
> such a definition, Congress considered and rejected the use of a threshold future income
> or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter
> 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665
> (Bankr.S.D.Ohio 1968).

Green, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law.

"The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per*

*se* rule we are urged to adopt would render this presumption [in favor of granting the relief

requested by the debtor] toothless."  Green at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and

section 109[11] of the Bankruptcy Code in particular.

---

[10]    Disposable income is defined, for purposes of section 1325, which requires the debtor to pay all of
his or her disposable income into the plan, as "income which is received by  the debtor and which is not reasonably
necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ."  11 U.S.C. §
1325(b)(2).

[11] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan
    association, building and loan association, homestead association, a New Markets Venture Capital
    company as defined in section 351 of the Small Business Investment Act of 1958, a small business
    investment company licensed by the Small Business Administration under subsection (c) or (d) of
    section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or
    similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit
    Insurance Act, except that an uninsured State member bank, or a corporation organized under

Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy.  Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990).  Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive."  *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

Id.

The Fourth Circuit Court of Appeals also provided a non-exclusive list of five additional factors that trial courts should consider when entertaining a motion to dismiss for substantial abuse.  They are:

(1)     Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)     Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)     Whether the debtor's proposed family budget is excessive or unreasonable;

(4)     Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5)     Whether the petition was filed in good faith;

---

section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

6

Green, 934 F.2d at 572.

The Fourth Circuit Court of Appeals also cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three additional, if not distinct, factors.

(6)    Whether the debtor engaged in free-wheeling spending[12];

(7)    Whether the debtor altered monthly obligations in statements to the court at least three times[13]; and

(8)    Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay favored creditors[14].

Green, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an accounting, rather, each factor is considered in light of its weight and relevance in the case under consideration. A factor that is irrelevant in one case may be determinative in another.

A. The Debtor's Disposable Income.

Whether a debtor has disposable income that he or she could use to fund a chapter13 plan is the primary factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse. See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005). ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse.")

---

[12]    See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

[13]    See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[14]    See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

The amount of a debtor's disposable income is important in the context of a motion under section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter 13 plan if that plan is to be confirmed.[15]  Disposable income is a measure of the amount that a debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter 13.   Disposable income may be defined as the difference between a debtor's net income and his net expenses.[16]

*Gross Monthly Income.*  The Debtor scheduled gross monthly income of $3,250.00 from her position as a secretary for LG&E Power Services.   This amount represents her annual salary, $38,940.00[17], divided by twelve ($38,940.00 / 12 = $3,245.00).   It does not include any income derived from work beyond forty hours per week.

The United States trustee asserts that the debtor's pay statement dated August 26, 2005, indicates that her gross income was $4,079.00.  The pay statement indicates that the debtor had earned total gross income for the year to August 26, 2005 in the amount of $32,008.15.  The pay statement consists of 17 two-week pay periods.   Her average gross income for the year to date was $1,882.83 per two-week pay period or $4,079.09[18] per month.

The United States trustee asserts that the determination of whether substantial abuse exists should be made as of the date of petition, including the analysis of whether the Debtor has

---

[15]      A debtor must commit all of his or her disposable income to plan payments if the plan is to be confirmed.  <u>See</u> 11 U.S.C. § 1325(b)(1)(B).  Additionally, the debtor must pay all priority claims as defined in section 507(a) in full, <u>see</u> 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-interest-of-the-creditors test), <u>see</u> 11 U.S.C. § 1325(a)(4).

[16]      See footnote 15 , <u>supra</u>, for the definition "disposable income" in the bankruptcy code.

[17]      <u>See</u> United States trustee Exhibit #6, Debtor's pay advice.

[18]      The Court calculates this amount to be $4,079.47 ( = [$1,882.83 X 26] / 12) per month.

sufficient disposable income to fund a chapter 13 plan during the next three, or more, years. This Court has, as the United States trustee notes, allows evidence of post-petition conditions when considering other motions to dismiss under Section 707(b). It would be illogical to engage in an analysis of a future probability without considering all information available on the date that the decision is made.[19]

In the absence of any evidence to the contrary, the Debtor's current income that is the best predictor of her future income. The Debtor's pay statement for the two-week period ended June 11, 2006, indicates that the Debtor earned $20,483.64 for the first 24 weeks of the year. This is the equivalent of $3,698.44 per month. The Court finds that this is the Debtor's monthly gross income from her employment with LG&E Power Services.

*Net Monthly Income.* In order to calculate the Debtor's net income from LG&E Power Services, it is necessary to determine her federal and state tax liabilities. Her estimated 2006 gross annual income from LG&E Power Services is $44,381.28 ( = 12 X $3,698.44). The tax rate for Federal Medicare and OASDI is 7.24%. Her total payment on account of these taxes will be $3,213.20, or $267.76 per month.

In order to calculate her federal and state tax liabilities for the year, it is proper to include her retirement income in her gross income because she is liable for taxes on those amounts. Her retirement income in 2005 was $14,022.00.[20] Her total estimated 2006 federal gross income

---

[19]    Ironically, the reason that this motion was not heard until almost nine months after the case was filed is in no small part due to the actions of the United States trustee. The United States trustee did not file the motion to dismiss until more than three-and-one-half months after the debtor filed her petition, did not set the first hearing, which was designated as a preliminary hearing, for another two months, and then continued that hearing for another three months. While the Court does not believe that the United States trustee has been at all dilatory in the prosecution of this matter, the United States trustee cannot now argue that the Debtor should be limited to evidence that is almost one year old when attempting to demonstrate her future income.

[20]    <u>See</u> Debtor's 2005 federal income tax return, United States trustee's Exhibit #5.

(Adjusted Gross Income) for purposes of this analysis is $58,403.22.  Her standard deduction for

2006 will be $5,150.00 and her personal exemption will be $3,300.00.[21]   Her expected annual

Adjusted Gross Income for 2006 is $49,953.22 ( = $58,403.22 - [$5,150.00 + $3,300.00]).   The

federal tax on this amount is $9,045.80 ( = $4,220.00 + [25% {$49,953.22 - $30,650.00}]) or

$753.82 per month.[22]

Her Virginia Taxable Income 2006 will be equal to her 2006 Federal Adjusted Gross

Income (with certain adjustments not applicable in this case) or $58,403.22.[23]  There is no tax

due on the first $5,000.00 of income.[24]   Thereafter, her tax liability is 2% of the first $3,000.00,

3% of the next $2,000.00 and 5 3/4% of the balance.[25]   Her estimated Virginia tax liability is

$3,983.18 ( = $600.00 + $600.00 + [.0575 X $48,403.22]) or $331.93 per month.  LG&E Power

Services also deducts Medical and Dental insurance, $65.00, and Supplemental Life Insurance,

$37.76, from the Debtor's check.   The Debtor's net income from LG&E Power Services per

month is $2,242.17 ( = $3,698.44 - [$267.76 + $753.82 + $331.93 + $65.00 + $37.76].  Her

retirement income is $1,168.50 ( = $14,022.00 / 12).  Her Net monthly income is $3,410.67 ( =

$2,242.17 + $1,168.50).

*Monthly Expenses.*   The following expenses, scheduled by the Debtor on her first

amended schedules, are not contested by the United States trustee and are allowed for purposes

---

[21]     See, e.g., I.R.S. Cat. No. 11340T, Form 1040-ES, Estimated Tax for Individuals (Including instructions.).

[22]     See 26 U.S.C. § 1 (2006).

[23]     Va. Code § 58.1-322.

[24]     Va. Code § 58.1-321.

[25]     Va. Code § 58.1-320.

10

of this analysis: (1) Rent, $625.00; (2) Utilities, $165.00; (3) Telephone, $60.00; (4) Internet

Services, $19.95; (5) Laundry and Dry Cleaning, 50.00; (6) Medical and Dental Expenses,

$46.00; (7) Transportation, $450.00; (8) Charitable Contributions, $80.00; (9) Health Insurance,

$92.60, (10) Automobile Insurance; $80.00;  (11) Storage, $100.00; and (12) Hospital Bills,

$100.00.  These twelve expenses total $1,868.55.

The Debtor also includes $250.00 in expenses for the payment of 2005 income taxes.   In

chapter 13, this would be paid through the plan, and hence is not properly included in the

calculation of disposable income.

The debtor scheduled clothing on her original schedule at $380.00 per month.   On her

first amended schedule, she failed to list any amount for clothing.   She asserted that this was in

error and on her second amended schedule listed clothing at $75.00 per month, an amount that

she states includes $25.00 for grooming costs such as haircuts.   This is a reasonable amount and

will be included in her expenses.

The Debtor scheduled food in the amount of $500.00 on her Second Amended Schedule

J.   The United States trustee argues that she only be allowed $360.00 for food.  The Debtor

argues that the $500.00 is reasonable given that she is a single person who is employed full time.

The Court agrees with the Debtor on this issue.  The amount, while on the high end of an

acceptable range for one person, is not unreasonable.

The Debtor has scheduled recreation in the amount of $230.00 on her Second Amended

Schedule J.    The United States trustee argues that she only be allowed $150.00 for recreation.

The recreation will be allowed in the amount of $150.00.  The Debtor's total allowed expenses

are $2,593.55 ( = $1,868.55 + $75.00 +$500.00 + $150.00).

*Net Monthly Income and the effect on a Chapter 13 Plan.*   The Debtor's monthly disposable income for purposes of a chapter 13 plan would be $817.12 ( = $3,410.67 - $2,593.55).  During the pendency of a thirty-six month chapter 13 plan, the Debtor could pay a total of $29,416.32.  Of this amount the chapter 13 trustee would be paid approximately 10% or $2,941.63 and the Debtor's attorney would be paid approximately $2,500.00.   Priority and general unsecured creditors would receive $23,974.69 ( = $29,416.32 - [$2,941.63 + $2,500.00]). The Debtor's unsecured creditors would receive $665.96 per month if the Debtor's expenses are allowed in the above amounts.  While the Debtor may be allowed more for some expenses in a chapter 13 case, it may be concluded that the Debtor would have sufficient income to pay her unsecured creditors a significant amount, even 100%, of their claims during the pendency of a chapter 13 plan.

B. Other <u>Green</u> Factors to be Considered.

*(1) Financial Trauma.*  The first factor other than disposable income mentioned in <u>Green</u> concerns whether the Debtor has experienced a financial trauma in the time leading up to the filing of the petition.   Financial traumas include such things as a medical debt, an involuntary change in employment, and a change in the family structure such as a divorce or the death of a spouse.  The United States District Court for the Western District of Virginia has commented on this issue thus:

> Under the first factor, the bankruptcy petition was not filed because of sudden illness, calamity, disability, or unemployment.  Courts have held that this factor weighs in favor of substantial abuse when filing is not due to some "unforeseen tragedy."  *In re Norris,* 225 B.R. 329, 333 (Bank.E.D.Va.1998);  *see In re Vansickel,* 309 B.R. 189, 211 (Bank.E.D.Va.2004).

<u>Harrelson</u>, 323 B.R. at 178.  In <u>Vansickel</u>, the Court discussed the relevance of a financial

trauma in the determination of substantial abuse.

> Death, illness, unemployment and divorce are part of life's risks, part of the risks borrowers run when borrowing money and lender's run when lending money.   Absent more, the presence of those calamities tends to favor the relief the debtor seeks. . . . The presence of a calamity is probably more important than the absence of a calamity.

Vansickel at 215.

In this case, the Debtor has experienced both unemployment and illness.   In June of 2002, she lost her job with Alcoa Aluminum when that company down-sized.   She received an early retirement pension in 2003 of approximately $12,784.00, or $1,065.33 per month.   In 2003, she accepted the employment that was available to her, working for a restaurant (Morton's of Chicago), a temporary employment agency (Manpower), a construction company (Hourigan Construction Corp.), a hospital (the University of Virginia Hospital) and a department store (Dillard's, Inc.).   From these five employers she earned a total of $22,974.00 in 2003[26].   In 2003, she was employed by LG&E Power Services, earning $21,770.00 in that year[27].   She continued to look for full time employment and, in 2004, she obtained employment with LG&E Power Services, earning $21,770.00 in that year[28].   While the United States trustee has did not introduce any evidence indicating how much the Debtor earned while employed at Alcoa Aluminum, it is clear that she did not depend on credit to support herself after she lost that job. Instead, she took the work that was available to her.

The Debtor has continued to work while experiencing health problems.   She has experienced intestinal problems that required, or compelled, her to purchase organic foods.

---

[26]     See United States trustee Exhibit #3.

[27]     See United States trustee Exhibit #4.

[28]     See United States trustee Exhibit #4.

13

She also testified that she has felt quite lethargic for some time before she filed and in January of 2006 (post-petition) had a operation to implant a pacemaker for her heart.  During January and February of 2006, the Debtor missed six weeks of work at LG&E Power Services.[29]

Several years ago she had back surgery.  Recently, she experienced a numbness in her left leg, a residual effect of the back surgery.[30]  The numbness rendered her unable to drive her only vehicle, a 1995 Explorer, because it has a stick shift.  As a result, she incurred a one-time post-petition expense of $840.00 to rent a vehicle for a month, after which she withdrew $4,000.00 from her 401K account in order to purchase a 1997 vehicle.

These facts such are strong evidence that the filing of this chapter 7 petition does not constitute substantial abuse and that the Debtor should be granted the relief that she seeks.  This factor weighs heavily in favor of granting the relief sought.

*(2) Excessive Credit.*  The second factor requires the court to ascertain whether the Debtor incurred cash advances and made consumer purchases *far* in excess of his or her ability to pay.  The Court in <u>Vansickel</u> addressed this factor.

> In considering whether a Chapter 7 debtor incurred cash advances and made consumer purchases far in excess of his or her ability to pay, under Fourth Circuit's <u>*Green*</u> test for determining whether a particular case constitutes "substantial abuse," court should not interpret this factor broadly, as to do so would be contrary to the Bankruptcy Code's presumption in favor of relief; instead, this factor is more properly an examination of the nature of the debt incurred and of debtor's reasonable expectations at the time that the obligations were incurred.  Bankr.Code, <u>11 U.S.C.A. § 707(b)</u>.

<u>Vansickel</u> at 211.

---

[29]      <u>See</u> Debtor's testimony, transcript of hearing at page 25:4-5.

[30]      <u>See</u> Debtor's testimony, transcript of hearing at page 18:10-20.  The numbness left the Debtor unable to drive the 1995 Explorer, a stick-shift, so she rented a car for a month.

In <u>Vansickel</u>, the United States trustee argues that the debtors' Schedule F spoke for itself, that the debtors overextended their ability to meet their current obligations, and that they voluntarily incurred consumer debts beyond their ability to pay them.  In <u>Vansickel</u>, the debtors unsecured debt totaled. $28,220.00.  The Court described this amount as "not by any measure extraordinary".  <u>Id.</u>  The debtors' two largest claims were in the amounts of $7,868.00 and $7,449.00.  The Court found it relevant that (1) there was no evidence that any of the claims were greater than the account limit; and (2) there was no evidence whether the credit card purchases were for  luxury goods or services or routine expenditures.  The Court concluded that the United States trustee had failed to prove his assertion.

If this factor is broadly interpreted, all debtors start out with it weighing against them.   All debtors have incurred obligations in excess of their ability to repay them.  The very fact that they filed bankruptcy is evidence of this.   Such a broad interpretation is contrary to the presumption in favor of relief contained in § 707(b).  This factor is more properly an examination of the nature of the debt incurred and of the debtor's reasonable expectations at the time that the obligations were incurred.   Did the debtor have a reasonable expectation of paying the obligation, or repaying the debt?

Were the obligations for luxury goods or services?   Were they consistent with the debtor's financial status in the community?   Was there a sudden unexplained change in spending patterns?   These questions are directed to the fundamental purpose of § 707(b), whether the bankruptcy system is being used by a debtor "to take ***unfair*** advantage of his creditors."  *Green,* 934 F.2d at 570 (emphasis added).

Here, it cannot be said that the debts were excessive.   They are, in fact, relatively modest.   Nor can it be said that the debtors did not have a reasonable expectation of repaying them when they were incurred.   It is not known over what time the debts were incurred;  whether regular payments were maintained, and if so, how long;  whether the purchases were for luxury goods or services;  or whether one credit card was being used to pay others.   To make that finding, the court would need additional evidence of what was purchased and when.   The statutory presumption is in favor of the relief requested by the debtor.   The burden of proof is on the United States Trustee.   In the absence of evidence, the court cannot find that the debts were excessive and beyond the debtors' ability to pay.

<u>Vansickel</u> at 211-212.

In the case at bar, the United States trustee asserts that the Debtor filed her petition as a

result of overspending over time and refusing to adjust her cost of living expenditures to reflect

the obligation to repay creditors.  As in <u>Vansickel</u>, the United States trustee has presented no

evidence in support of this assertion.

The Debtor scheduled three secured debts.  The first is a $1,455.80 balance on a debt

secured by a 1995 Ford Explorer, which the Debtor values at $1,930.00.  This debt was

reaffirmed.  The second is a deficiency claim in the amount of $3,866.39 arising from a debt

incurred to purchase a Toyota, which was repossessed.[31]  The third secured claim arises from a

$500.00 debt owed to the University of Virginia Credit Union.

The Debtor's unsecured claims, which total $20,735.30, include debts arising from a

401K loan ($919.91), from taxes ($1,190.00), from electricity ($73.38 and $111.23), cable TV

($201.11) telephone service ($730.21 and $382.00), a lease in South Carolina ($4,075.44) and

Credit Cards ($113.39, $182.32, $8,559.00, 702.24, $836.00, and $991.00).

In this case, the Debtor's debts total much less than those in <u>Vansickel</u>, and, as in

<u>Vansickel</u>, the United States trustee has presented no evidence regarding the nature of the

purchases or abuse of the accounts.  There is no evidence of cash advances; there is no evidence

that the Debtor has made consumer purchases in excess of her ability to pay.  The Debtor's debts

in this case are quite ordinary in both kind and amount.  This factor strongly counsels denying

the motion.

*(3) Excessive Budget.*  The third factor concerns whether the Debtors' proposed budget is

excessive or unreasonable.  The United States trustee argues that the Debtor's expenses of food

---

[31]    <u>See</u> Debtor's testimony, transcript of hearing at page 8:20 to page 9:3.  Because the vehicle had
been repossessed and the claim constitutes a deficiency claim in full, it would have been more proper to schedule the
claim as an unsecured claim.

at $500.00 and recreation at $230.00 are excessive.[32]   The Debtor asserts that they are not.

The Debtor rents a room from her daughter.   The United States trustee has presented no evidence that the Debtor has access to her daughter' kitchen or the use of storage facilities. Even if she does, as a single person working full time, it is reasonable to expect that she would have to eat some of her meals away from her residence.   The amount of $500.00 per month for food is not "excessive".

The Court concludes that the Debtor's recreation expense of $230.00 is not excessive. While an objection in chapter 13 to this amount would probably be sustained, the amount cannot be said to be excessive especially in light of the fact that the rest of the Debtor's expenses are quite reasonable.

In Green, the Fourth Circuit held that Section 707(b) was

" introduced [to provide] an additional restraint upon a debtor's ability to gain Chapter 7 relief, by allowing a bankruptcy court to deal equitably with the situation in which an unscrupulous debtor seeks to gain the court's assistance in a scheme to take unfair advantage of his creditors.

Green, 934 F.2d at 570.   The Debtor's assertions that her budget should include $500.00 for food and $230.00 for recreation in her amended schedules do not in the least amount to an attempt by an unscrupulous debtor to gain the court's assistance in a scheme to take unfair advantage of her creditors.    At the most, *if* this were chapter 13 case, it would constitute a reasonable attempt by the Debtor to set the parameters of a hypothetical chapter 13 plan.  The Debtor's budget is not excessive.

---

[32]        These amounts are scheduled by the Debtor on her amended schedules.  See the United States trustee's Exhibits #11 and #12.  She originally scheduled food at $800.00 and recreation at $250.00.  See the United States trustee's exhibit #1.  Those amounts were considered infra in the discussion of the accuracy of the Debtor's schedules.

*(4) Accuracy of the Debtors' Schedules and Statement of Financial Affairs.*  The next consideration is whether the Debtor's schedules and statement of current income and expenses reasonably and accurately reflect the Debtor's true financial condition.   The United States trustee argues that the Debtor substantially under-reported her income.  This examination must be made from the perspective of the Debtor's circumstances at the time that she filed her schedules.

The United States trustee asserts that this is not an accurate reflection of her gross income.  The assertion is based on the fact that the debtor's pay statement dated August 26, 2005, indicates that her gross income was $4,079.00 per month.  The pay statement indicates that the debtor had earned total gross income for the year to August 26, 2005 in the amount of $32,008.15.  This includes 17 pay periods.   Her average gross income for the year to date was $1,882.83 per two-week pay period or $4,079.09[33] per month.  This amount of monthly gross income, $4,079.09, is considerable more that the $3,250.00 in gross monthly income from her position with LG&E Power Services that the Debtor scheduled.

The Debtor asserts that the amount on her August 26, 2006, pay statement was not an accurate reflection of her current income, nor her expected income in the future.  The Debtor testified that she was receiving very little overtime at the time that she filed her petition.[34] She testified that she did not believe that she would continue to receive the overtime income that she had during the eight months pre-petition.  She scheduled her income at $3,250.00, an amount that equaled her annual salary of $38,940.00 without overtime income, divided by twelve.

---

[33]    The Court calculates this amount to be $4079.47 ( =  [$1,882.83 X 26] / 12) per month.

[34]    <u>See</u> Debtor's testimony, transcript of hearing at page 11:13-22.

18

The United States District Court for the Western District of Virginia  has provided guidance concerning the consideration of overtime income when estimating disposable income in a hypothetical chapter 13 case.  In that case, the Court held that the debtor "will apparently continue to work overtime, and although the Court should not require him to overexert himself on behalf of his creditors, neither should the Court ignore the extra income that he will doubtless earn." McDow v. Fulcher, 2006 WL 148751 (W.D.Va.).  The same standard should apply when assessing the accuracy of a debtor's schedules.

In this case, the Debtor had reason to believe that she would not be offered additional overtime.   Further, she believed for health reasons that she would be unable to work that overtime if it were offered.  It was reasonable for her to include only her expected salary in her Schedule J.

The fact that the disclosed income was based on a reasonable assumption, a severe reduction in overtime, is evidenced through an examination of the Debtor's 2005 tax return and her last pay statement before the hearing on this matter.  The Debtor's gross income from LG&E Power Services for 2005 was $47,520.29.    This means that she earned approximately $15,512.00 during the last 9 two-week pay-periods.  She grossed an average of $861.78 per week, or approximately $3,734.38 per month during that period, an amount $345.00 per month less than she made during the first 26 weeks.

During the first 24 weeks of 2006, the Debtor earned approximately $3,698.00 per month.  The differential between the $3,250.00 per month scheduled by the Debtor and the $3,698.00 received by the Debtor is due to three factors: (1) Overtime income of $491.91 for 17.5 hours of overtime; (2) a pay increase from $38,940.00 per year to $40,270.00 per year that

19

the Debtor received in March; and (3) an annual "Gainshare" bonus in the amount of $1,661.66 received on the check for the period ending April 2, 2006.  The overtime income was income that the debtor could not count on as of the date of petition.   The pay increase was not due to come into effect for another seven months.  The Debtor received $1,363.04 in Gainshare in 2005. This Gainshare amount, $113.00 per month, should be included in the Debtor's gross monthly income.  The Debtor understated her income by approximately this amount.   This does not constitute a significant inaccuracy for purposes of this inquiry.

A fact which leads the court to believe that the Debtor did not intentionally schedule her gross income in an inaccurate amount is that her scheduled net income, $3,518.58, is greater than the net income calculated by the Court, $3,431.70, based on her eventual earnings.

The United States trustee also asserts that the Debtor overstated certain expenses, specifically food and clothing.  The United States trustee asserts that the $800.00 for food was excessive and not reflective of the Debtor's actually expenditures.  The Debtor testified at the hearing that in February of 2005 she began to experience intestinal problems when her immediate supervisor resigned and her work load increased, resulting in stress.   She further testified that she began eating organic food, which is more expensive than non-organic food,  to mitigate the problem.  She also testified that she was working longer hours, which necessitated eating prepared meals away from home, which is more expensive.  She further testified that she based on the figure on an estimate after going through her records.[35]  The United States trustee provided no evidence to the contrary.

The Court finds that while the Debtor may not now be spending $800.00 per month for

_____

[35]      See Debtor's testimony, transcript of hearing at page 12:24 to page 14:11.

food, that amount was a reasonably accurate amount at the time that she file her petition.  The

Debtor has filed an amended Schedule J listing food at $500.00 per month, made possible

because she no longer purchases the organic vegetables.[36]  This appears to be a response to the

comments of the United States trustee, not an admission that the previously scheduled amount,

$800.00, was inaccurate.

The United States trustee also asserts that the $380.00 that the Debtor scheduled for

clothing was not accurate.   The Debtor testified that she is the first person in the facility to greet

officers of the parent company when they visit.  She also testified that she when she retired from

Alcoa Aluminum she gained about 30 pounds so she spent a year or so updating her wardrobe.[37]

The Court found the explanation to be reasonable.  The Debtor has filed an amended schedule J

that listing clothing and grooming at $75.00.  She also explained that the expenses that she

scheduled under clothing included haircuts and other grooming costs.

The United States trustee also questioned the Debtor's recreation expense of $250.00 per

month, which she has reduced to $230.00.   While the Court would likely not allow recreation

expenses of $250.00 per month in calculating disposable income in chapter 13, it is concluded

that that amount constitutes a reasonably accurate representation of the Debtor's actual

expenditures at the time that she filed her petition.  The Court concludes that the Debtor's

schedules, taken as a whole, are reasonably accurate.  To the extent that this factor is relevant, it

weighs in favor of denying the motion to dismiss.

*(5) Bad Faith.*  The United States trustee asserts that the Debtor committed an act of bad

---

[36]     See Debtor's testimony, transcript of hearing at page 24:8-14.

[37]     See Debtor's testimony, transcript of hearing at page 14:12 to page 15:12.

21

faith when she did not disclose income due to overtime.   As noted above, the Debtor's schedules

were reasonably accurate in light of her expected, and actual, current and future income.   Any

discrepancy was small and does not rise the level of unscrupulous behavior designed to take

unfair advantage of her creditors.

### III. Conclusion

The burden of proof is on the United States trustee to prove beyond a preponderance of

the evidence that the prosecution of this chapter 7 case would constitute a substantial abuse.  The

United States trustee has demonstrated that the debtor has sufficient disposable income to fund a

chapter 13 plan.  This standing alone is not sufficient to dismiss a chapter 7 case.  None of the

other factors suggested by the Court in Green counsel dismissal of this case.  To the extent that

they are relevant, they counsel permitting the Debtor to continue prosecuting this case under

chapter 7.  The Debtor is not an unscrupulous debtor seeking to gain the court's assistance in a

scheme to take unfair advantage of her creditors.  It would not be a substantial abuse of the

provisions of chapter 7 of the bankruptcy code to permit the Debtor to continue as a debtor under

chapter 7.   The motion to dismiss this case shall be denied.

An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the United States

trustee, the chapter 7 trustee, the Debtor and Roy Bradley, Esq., counsel for the Debtor.

Entered on this 25th day of August, 2006.

_____
William E. Anderson
United States Bankruptcy Judge